# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MIGUEL MARIO LAM, | ) | Old case #1:08-CV-01747 LJO JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| J.D. HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Miguel Mario Lam ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1991 conviction for two counts of attempted murder with firearm enhancements and an additional enhancement for causing great bodily injury. ( Answer at 1). Petitioner is serving a sentence of twelve years to life. (Pet. at 2).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the decision by the California Board of Parole Hearings (the "Board") to deny him parole. Petitioner appeared before the Board on June 14, 2007. (*See* Pet. Ex. A, Transcript of Parole Hearing, at 1).

Petitioner filed a petition for writ of habeas corpus Court challenging the Board's denial of parole with the Los Angeles County Superior, which issued a reasoned decision denying the petition on July 31, 2007. (*See* Pet. Ex. Decision of Superior Court).

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (*See* Answer Exs. 1, 3). The State courts issued summary denials of those respective petitions. (*See* Answer Exs. 2, 4).

1   On November 14, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.
2   Respondent filed a response to the petition on July 6, 2009.  Respondent admits that Petitioner has
3   exhausted his state remedies and that the instant petition is timely.  (Answer at 2).  Petitioner filed a
4   reply to Respondent's answer on August 12, 2009.

## FACTUAL BACKGROUND

The facts of the commitment offense were considered by the Board in determining whether Petitioner was suitable for parole and are thus relevant to the Court's inquiry into whether the State court's decision upholding the Board's decision was objectively unreasonable.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the life crime as contained in the California Court of Appeal's October 5, 1992, decision on direct review of Petitioner's conviction.  (Pet. Ex. A at 10).  As read into the record, the decision states:

> The evidence presented by the people established that over a several hour period on the night of October 23, 1989, [Petitioner] {inaudible}, Louis Ortiz, and Francisco Minjares, as they sat in the cab of Ortiz's truck in a trucker's parking lot. Repeatedly, he expressed his intention to kill the two men.  It was well known [Petitioner] was to some extent intoxicated and apparently was angry over a relatively small sum of money allegedly owed to him by Ortiz's father.  As one point, he struck Ortiz with a machete.  Later he returned with a rifle and repeatedly shot both Ortiz and Minjares inflicting tragic and permanent injuries upon them.
> When the police arrived at [Petitioner]'s residence the following morning, he readily authorized them to search for the subject firearm.  When they found a rifle and assorted ammunition, he told them that it was the weapon for which they were looking. After advisement and waiver of his constitutional rights, he stated, "I shot him and I threw the gun on the ground between the trucks.  Probably those asshole niggers took the gun." [Petitioner] further averred that he had been involved in [a] physical altercation with the victims.  They pulled out a gun and he took the gun away from them and he shot them with the fun.  He also stated, "I shot them and I would have killed them, but I ran out of bullets.  I believe that when somebody tried to kill me, I can kill them."
> In defense, [Petitioner] admitted fighting with Ortiz and Minjares and even striking Ortiz with a machete he allegedly had been using to repair his car.  However, he asserted he had done so only to ward off a threatened attack by Ortiz.  He further claimed that he had then departed and that [he] neither returned nor shot the two men that night.  He denied making the statements ascribed to him by the interrogating officer.

(Id. at 11-13).

\\\
\\\
\\\

**DISCUSSION**

**I.      Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner initiated this action and the denial of parole occurred when Petitioner was incarcerated at Avenal State Prison, which is located in Kings County. (Pet. at 2). As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.     ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

\\\

1    Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062,

1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*.

Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. 2, 4; Pet. Ex., Superior Court Opinion). As the California Court of Appeal and California Supreme Court issued summary denials of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that of the Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

\\\

\\\

**III.     Review of Petitioner's Claim**

*A.     Claims in Ground One*

In what Petitioner labels as his first ground for relief, Petitioner presents a veritable hodgepodge of legal claims–none of which, the Court finds availing.  As the Los Angles County Superior Court denied these claims without explanation, the Court independently reviews the claims. *See Davis v. Woodford*, 446 F.3d 957, 960 (9th Cir. 2006).  Among the claims contained in this ground for relief are the following: (1) section 2402 of the California Code of Regulations, Title 15, is unconstitutionally vague as applied to attempted murderers; (2) the Board's mistakenly did not set a matrix term; (3) an equal protection claim relating to the treatment of those convicted of attempted murder as opposed to those convicted of murder; (4) the Board was not a fair and impartial body, and therefore was not carrying out their legislative mandate; and (5) the Board's failure to comply with California Penal Code Section 3041 violated the separation of powers doctrine.

*1.     Unconstitutionally Vague Parole Standard*

"Petitioner contends that California Code of Regulations Title 15, section 2402(c) is unconstitutionally vague for inmates convicted of attempted murder."  (Pet. Mem. P. & A. at 7). Generally, a regulation is void for vagueness "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and discriminatory enforcement."  *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (finding that challenges to a regulation or statute's vagueness that do not implicate First Amendment rights are analyzed on an as applied basis).  Consequently, the inquiry this Court undertakes is whether section 2402(c) provided Petitioner with adequate notice that this statute applied to attempted first degree murders and whether the statute provided the state court with adequate guidance.

The first and more telling sign that this statute was expressly intended to apply to attempted murders is the title of the regulation, stating "Parole Consideration Criteria and Guidelines for Murders Committed On Or After November 8, 1978, and Specified Attempted Murders."  Cal. Code Regs., tit. 15, § 2402.  Additionally, the punishment for attempted first degree murder in California is a term of life imprisonment with the possibility of parole.  Cal. Penal Code § § 190, 664.  Section

1  2402 applies to parole considerations for life prisoners. *See Penn v. Ayers*, 2008 WL 1930661, *3
2  (N. D. Cal. 2008) (unpublished) (applying section 2402 to attempted first degree murder conviction);
3  *In re Schlappi*, 2009 WL 2145380, * 4 (Cal. Ct. App. 2009) (unpublished) (same).  Thus, it would
4  seem evident to a reasonable person that section 2402 would apply to those convicted of attempted
5  first degree murder.  In support of his contention, Petitioner presents no argument that the statute
6  could be interpreted by a reasonable person to not apply to those convicted of attempted first degree
7  murder.  Additionally, Petitioner does not cite any authority or present any argument that the
8  regulations do not provide adequate guidance for the court.  Thus, the Court cannot find that the
9  regulations were the unconstitutionally vague as applied to those inmates convicted of attempted first
10 degree murder.

### 2.     *Matrix of Base Terms*

12 Petitioner interposed the Board's failure to apply a matrix of base terms into his argument that
13 the Board violated his due process rights.  Title 15 of California Code of Regulation section 2403(c),
14 requires the Board set a base term pursuant to a matrix of base terms.  However,  Petitioner's claim
15 does not state a grounds for relief as California's regulations clearly establish that the setting of a
16 base term under 2403(c) occurs *after* the initial determination that Petitioner is suitable for parole.
17 *See Murphy v. Expinoza*, 401 F.supp.2d 1048, 1054 (C.D. Cal. 2005) (citing *In re Danneberg*, 34
18 Cal.4th 1061, 1078 (Cal. 2005) and Cal. Code Regs., tit. 15, § 2403(a) in stating, "absent a
19 determination of parole suitability by the BPT, there is no 'base term' [citation]. Thus, petitioner's
20 ongoing detention does not deprive petitioner of due process of law").  Consequently, Petitioner has
21 no due process right to the application of the matrix term prior to a finding that he is suitable for
22 parole and cannot obtain habeas corpus relief on this ground.

### 3.     *Equal Protection*

24 While Petitioner does not actually state that his equal protection rights have been violated,
25 Petitioner argues that the treatment of inmates convicted of attempted murders "are statistically being
26 denied parole after spending 20-30 years in prison when the matrix specifies a much shorter time."
27 (Pet. Mem. P. & A. at 7).  Petitioner links this argument to his earlier contention that California Code
28 of Regulations, title 15, section 2402 should not apply to inmates incarcerated for attempted murders

in the same manner it applies to those inmates convicted of murder.  The Court interprets such an argument as a claim that his rights under the equal protection of the law has been violated as Petitioner cites to several equal protection cases in support of his argument

A prima facie case of discrimination requires more than an allegation that other prisoners have received more lenient sentences. *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991); *see also McGinnis v. Royster*, 410 U.S. 263 (1973) (applying rational basis test to uphold New York statute denying certain prisoner's good time-credit for parole eligibility).  "[A] mere demonstration of inequality is not enough; the Constitution does not require identical treatment.  There must be an allegation of invidiousness or illegitimacy...before a cognizable claim arises." *McQueary*, 924 F.2d at 835.  Here, Petitioner fails to even allege a *prima facie* case as Petitioner does not even allege that he was treated differently from other prisoner; rather he complains that his class (attempter murderers) are being treated similarly to murderers.  Consequently, Petitioner has failed to state a cognizable equal protection claim.

### *4.     Biased Board*

Petitioner's contention that the Board's findings were erroneous under state law does nor present a cognizable claim outside of the liberty interest addressed *supra* as errors of state law generally do not provide a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (finding that claim that instruction was erroneous under state law is not a basis for habeas relief).  Likewise Petitioner's contention that the Board failed to be impartial is both speculative and conclusory as Petitioner has failed to provide any evidence to support this claim. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (finding that conclusory suggestions fall short of establishing a valid claim of a constitutional violation).

### *5.     Separation of Powers*

In a related contention, Petitioner contends that the legislature apparently delegated its power to the executive and that the Board's failure to apply by California Penal Code section 3041 violates the separation of powers doctrine.  It is unclear if Petitioner is contending that the Board's actions violate the separation of powers doctrine under the federal or state constitution.  A claim that it violates the federal constitution is not cognizable because the federal doctrine of separation of

1  powers does not extend to the states under the Fourteenth Amendment. *See Hughes v. Superior*
2  *Court*, 339 U.S. 460, 467(1950).  Thus, Petitioner cannot claim that the federal doctrine of separation
3  of powers extends to the Board's action as the Board is a state agency.  A claim that the Board
4  violated the doctrine of separation of powers contained in the California state constitution does not
5  give rise to a claim for federal habeas relief. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.
6  1985).

          ***B.***      ***Grounds Two-Five: Liberty Interest in Parole***

8       In the next three grounds, Petitioner contends that his due process rights were violated by the
9  Board's denial and their continued reliance on his commitment offense.
10      "We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty
11 or property interest which has been interfered with by the State; the second examines whether the
12 procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.
13 The United States Constitution does not, by itself, create a protected liberty interest in a parole date.
14 *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).
15      Petitioner contends that he has a protected liberty interest in parole stemming from California
16 statutes and regulations governing parole.  (Pet. Mem. P. & A. at 10-12).  Respondent denies that
17 Petitioner possess a federally protected liberty interest in parole though Respondent does recognize
18 that this argument is contrary to the Ninth Circuit Court of Appeal's previous decisions.  (Answer at
19 2).  The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory
20 language in a State's statutory scheme for parole creates a presumption "that parole release will be
21 granted when or unless certain designated findings are made, and thereby give rise to a constitutional
22 liberty interest.'"  *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v.*
23 *Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives
24 rise to a cognizable liberty interest in release on parole).  California Penal Code section 3041
25 contains the requisite mandatory language, thus vesting California prisoners "whose sentence
26 provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of
27 a parole release date, a liberty interest that is protected by the procedural safeguards of the Due
28 Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*,

334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard and for the Board to state their reasons for denial. (Answer at 2). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 4-5).[1] However, Respondent admits that a line of Ninth Circuit cases has found otherwise. (Id. at 5-6). Indeed, the Ninth Circuit has held that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole and that the some evidence standard is applicable under AEDPA. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. The rationale espoused by the Ninth Circuit in *Irons*, *Sass*, and *Biggs* is compelling and the Court rejects Respondent's argument that the application of the "some evidence" standard to the parole context is improper under AEDPA.

Errors of state law generally do not give rise to habeas corpus relief as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. at 67-68. However, the inquiry of "whether a state parole board's suitability

---

[1] Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id.* at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is at least entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that he was deprived of any of these procedural safeguards.

determination was supported by 'some evidence'" is framed by the state statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

After reviewing the record, the Court finds that the California Superior Court unreasonably applied the some evidence standard. *See* 28 U.S.C. § 2254(d)(1). The State court's decision was unreasonable as it conflated the ultimate inquiry, whether Petitioner was currently dangerous, with the inquiry of whether "some evidence" supported the unsuitability factors. The Los Angeles Superior Court reviewed several of the factors relied upon by the Board–the commitment offense, the lack of parole plans, and Petitioner's pre-incarceration history of assaultive behavior–before concluding that the evidence of the particularly egregious nature of the commitment offense was sufficient to meet the some evidence standard. (Decision of Superior Court at 1-2). The California Supreme Court in *Lawrence* held that, "[t]he relevant determination for the Board and the Governor

is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate." *Id*. at 1227.  The court noted that such a holding was not novel as this "conclusion that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision *is rooted in the governing statute*." *Id*. at 1210-1211 (emphasis added).  The *Lawrence* court further reiterated that the decision did not mark a break with previous State court precedents in discussing why its decision would not produce a wave of reversals, explaining that even prior to *Lawrence,* the "overwhelming majority" of State appellate court's decision affirming a denial of parole "was not founded solely upon the conclusion that the circumstances of the commitment offense were more than what was minimally required to obtain a conviction of that offense, but rather upon the presence of other additional statutory factors establishing unsuitability." *Id*. at 1228.  Here, it is obvious that the State court conflated the two inquiries as the court assumed that the evidence supporting a finding that the crime was particularly egregious "alone, was sufficient to support the Board's finding of unsuitability." (Opinion of Superior Court at 2).  Despite the Superior Court's recognition that its ultimate inquiry was with regard to Petitioner's current dangerousness, the Superior Court further failed to articulate "a rational nexus between those facts and current dangerousness." *In re Lawrence*, 44 Cal.4th at 1227.

   The fact that the State court's decision was an objectively unreasonable application of the some evidence standard does not automatically result in habeas corpus relief as a federal habeas court may only grant relief if a Petitioner's constitutional right is violated. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (citing 28 U.S.C. § 2241(c)(3) in noting that a federal habeas court's finding that State court's decision is contrary to established federal law does not end that court's inquiry as, "[o]ur power to grant the writ of habeas corpus to a state inmate depends on his actually being 'in custody in violation of the Constitution or laws ... of the United States'").  Here, the existence of some evidence in record would preclude the Court from granting Petitioner relief.  Therefore, the Court proceeds to examine whether there was some evidence in the record to support the Board's denial of parole.  The Court notes that the "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

The Board relied on several factors in denying Petitioner parole, including his commitment offense, Petitioner's history of assaultive behavior prior to incarceration, and his post incarceration disciplinary record. (Pet. Ex. A at 61-63). The Court finds that the evidence stemming from these three factors bears a rational nexus to, and is sufficient evidence of, Petitioner's current dangerousness. Petitioner's commitment offense was particularly heinous as he first attacked the victims with a machete before returning to finish the job with a rifle. Petitioner fired several shots at the victims and then left the victims to die after he collected the shell casings. Additionally the crime stemmed from a monetary debt of twelve dollars owed to Petitioner by one of the victim's father. In sum, his crime contained almost all of the characteristics of an especially heinous crime. *See* Cal. Code Regs., tit. 15, § 2402(c)(1) (citing as four of the five factors to consider: 1) multiple victims being attacked; 2) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; 3) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; and 4) the motive for the crime is inexplicable or very trivial in relation to the offense).

In addition to the commitment offense, Petitioner also had a history of domestic violence incidents which constitutes a previous record of violence.[2] The record reveals that Petitioner was charged with domestic violence battery in 1984 and 1986. (Pet. Ex. A at 15). He was convicted of battery on a police officer/emergency personnel in August 1985. (Id. at 16). Petitioner was charged with inflicting corporal punishment on spouse in 1987. (Id. at 17). He was found guilty in March 1987 of misdemeanor spousal abuse. (Id). Additionally, he was charged in April 1989 of domestic violence and convicted of battery in March 1990. (Id. at 17-18).

Lastly, Petitioner's post incarceration disciplinary record reveals he has a serious disciplinary infraction for mutual combat that occurred in 2007, the same year as the parole hearing.[3] Considered

---

[2] The Court finds the Superior Court's finding that there was "no evidence to support the Board's finding that Petitioner has a prior record of violence" perplexing in light of the ample evidence, stated above, that Petitioner has been either charged or convicted of multiple incidents involving domestic violence.

[3] While Petitioner contests the validity of this disciplinary infraction, the Court notes that his appeal of the disciplinary infraction was denied at all levels. More importantly, it is not this Court's task to re-weigh the evidence that was before the Board, which found this infraction significant in assessing Petitioner's current dangerousness. *See Hill*, 472 U.S. at 455 ("[t]he requirements of due process are satisfied if some evidence supports the decision...Ascertaining whether this

in light of the heinous nature of the commitment offense, Petitioner's pre-incarceration record of violence and his participation in a violent disciplinary infraction are probative of his current dangerousness. Consequently, the Court finds that there was a modicum evidence to support the Board's finding that Petitioner currently poses an unreasonable risk of danger to the public safety.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 29, 2010**           /s/ John M. Dixon
                                      UNITED STATES MAGISTRATE JUDGE

---

standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence")(emphasis added); *see also Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994) (finding that court cannot re-weigh the factors supporting parole suitability and the factors supporting parole unsuitability).